U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed August 31, 2009

_____
**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RHONDA LASHAWN | § | |
| HAMILTON-SIMMONS, | § | CASE NO. 08-34897-SGJ-13 |
| | § | |
| D E B T O R. | § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER ON MOTION FOR RELIEF FROM THE AUTOMATIC STAY FILED BY EXPRESSWAY FINANCIAL, INC. AND SETTING FURTHER HEARING FOR SEPTEMBER 30, 2009**

CAME ON FOR CONSIDERATION by this court the Motion for Relief from the Automatic Stay ("Motion") filed by Expressway Financial, Inc. ("EFI") [DE #28].[1]  The court has jurisdiction in this contested matter pursuant to 28 U.S.C. § 1334.  This is a

_____

[1] References herein to "DE # _" refer to docket entry numbers for pleadings filed in the Rhonda LaShawn Hamilton-Simmons bankruptcy case, Case No. 08-34897-SGJ-13, as shown on the PACER CM/ECF docket system.

1

core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). The following constitutes the court's findings of fact, conclusions of law and ruling in connection with the Motion. The court reserves the right to supplement or amend these findings of fact and conclusions of law. Any finding of fact that should be construed to be a conclusion of law shall be so regarded, and *vice versa*.

## FINDINGS OF FACT

1.    On October 1, 2008, Rhonda LaShawn Hamilton-Simmons (the "Debtor") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.

2.    The Motion involves a 2007 Chrysler Pacifica ("Car") being utilized by the Debtor.

3.    Approximately one-and-a-half years before the Debtor's bankruptcy filing, Movant, EFI, and the Debtor entered into a Motor Vehicle Lease Agreement, dated March 1, 2007 ("Lease Agreement"), pertaining to the Car. The Lease Agreement contemplated that EFI would be the Lessor and the Debtor would be the Lessee on the Car. The evidence at trial was that there is a third party that is relevant to the Lease Agreement, although not mentioned in the Lease Agreement. That party is Pavillion Bank. According to the unrefuted testimony, EFI and Pavillion Bank have a business relationship, whereby Pavillion Bank serves as the "collateral agent" and is the actual lienholder listed on the

titles of the cars that EFI leases.  Accordingly, Pavillion Bank is the lienholder on the Car.

4.   The Lease Agreement provided that the Debtor would pay to EFI $665 per month in lease payments over a 48-month term.

5.   On December 24, 2008, the Debtor obtained confirmation of her Chapter 13 plan.  Ex. EFI-9 ("Plan").  The court takes judicial notice of the Order Confirming Chapter 13 Plan [DE #27].

6.   The Chapter 13 Plan addresses the Car and treatment of **Pavillion Bank** at Section I.E.(1)—entitled "Secured Creditors-Paid by the Trustee."  There, the Debtor treated Pavillion Bank as a secured creditor, with a security interest in the Car, whose secured claim would be crammed down to the value of the Car.  *See* 11 U.S.C. § 506(a).  The Debtor used a value of $11,970 for the Car and proposed to pay this value/secured claim out over 60 months, at 6% interest, which would result in a $231.42 per month payment.  The Plan further mentioned, at Section I.E.(1), under the reference to Pavillion Bank, that Pavillion Bank's claim related to a "Vehicle lease (2007 Chrysler Pacifica)," but there was no mention of EFI.  Further, there was no reference to the Lease Agreement made in Section I.K. of the Plan, which was the section of the Plan dealing with "Executory Contracts and Unexpired Leases" on which the Debtor was a party.

7.   The possible legal infirmities with regard to the Plan and treatment of the Car and Pavillion Bank/EFI were at least

3

two-fold:  (a) EFI was a party to a **_personal property lease_** with
the Debtor, not a party to a secured financing transaction; and
(b) even if EFI could be deemed to be a party to a secured
financing transaction with the Debtor (as opposed to a true
personal property lease), the so-called "dangling paragraph"
following Section 1325(a)(9) of the Bankruptcy Code would not
permit the Debtor to cram down the secured claim of Pavillion
Bank/EFI[2] to the value of the Car (given that the vehicle had
been purchased less than 910 days before the bankruptcy filing).

    8.    Neither EFI, nor Pavillion Bank (see footnote 2 herein)
objected to the Plan's treatment of the Lease Agreement.  As
earlier mentioned, the Plan was confirmed, and the confirmation
order is a final, nonappealable order.

    9.    Less than a month after Plan confirmation, on January
14, 2009, EFI timely filed a proof of claim in the Debtor's case

---

    [2] The court is using Pavillion Bank/EFI interchangeably
here.  As mentioned, EFI was the party to the Lease Agreement
and, as hereinabove described at paragraph 9, EFI filed a proof
of claim (not Pavillion Bank) in the Debtor's case.  The court
notes that it does not view the reference to Pavillion Bank
in the Plan, rather than EFI, to be an indication of bad faith on
the part of the Debtor.  As mentioned earlier herein, EFI
testified that Pavillion Bank was the lienholder on the Car title
(_see_ 11 U.S.C. § 102(2)) and the Debtor credibly testified that
she had often delivered Car payments to Pavillion Bank's business
location during the history of her having the Car.  So there was
a logical reason to reference "Pavillion Bank" in the Plan,
rather than EFI.  The real issue is the Plan's treatment with
regard to the Car and the Lease Agreement—_i.e.,_ the cram down
approach—rather than whether Debtor correctly noted the true
party-in-interest.

4

(the bar date being February 8, 2009). The proof of claim asserted that EFI had a secured claim in the amount of $23,529.75 ($1,829.75 in arrearage) in respect of the Lease Agreement on the Car.

10. Thereafter EFI filed its Motion that is the subject of this contested matter, seeking relief from the automatic stay to exercise its state law rights with regard to the Car. Identical to its position in its proof of claim, EFI asserted that the Car was subject to a Lease Agreement (not a secured financing transaction) between the Debtor and EFI, that such Lease Agreement called for payments of $665 per month, and that the Debtor was significantly behind in making payments prepetition and postpetition. EFI claimed that it was not adequately protected and should be allowed to repossess the vehicle. EFI represented that it had received (as of the time of the filing of the Motion) just one adequate protection payment in the amount of $149.93 from the Chapter 13 Trustee during the case.[3] ***The Motion was completely silent about the confirmed Plan.***

11. The Debtor filed an Answer and Objection to the Motion on January 27, 2009, mostly denying the allegations in the Motion. The Answer and Objection was also completely silent

---

[3] The court takes judicial notice that an Authorization for Adequate Protection Disbursements ("AAPD"), filed with the Debtor's Plan [Ex. EFI 9] and dated September 29, 2008 [sic], proposed pre-confirmation adequate protection payments to Pavillion Bank of $149.63.

5

about the confirmed Plan.

12. After the parties requested continuances of various preliminary hearings set on the Motion, the court held an evidentiary hearing on the Motion, at which time the Plan became "front and center" in the contested matter.

13. Specifically, what was the *res judicata* effect of the Debtor's confirmed Chapter 13 Plan? EFI argued that the Plan had no *res judicata* effect on it for a couple of reasons. First, EFI claimed it was never served with notice of the Plan. Second, EFI simply pointed to the alleged legal impermissibility of the treatment of EFI and/or Pavillion Bank in the Plan (*i.e.,* the Plan failed to treat EFI's contractual arrangement with the Debtor as a personal property lease). The court directed the parties to file post-hearing briefing on the *res judicata* and notice issues.

## CONCLUSIONS OF LAW

### A. Notice Issue.

14. First, with regard to the notice issue, the court concludes, from the totality of the evidence, that EFI (and Pavillion Bank, for that matter) received sufficient notice of the Plan.

15. EFI's representative testified that he had actual notice of the Chapter 13 **case** sometime in October or mid-November of 2008 (prior to confirmation), although he further testified

that he did not recall receiving the **Plan** and did not have a copy of the Plan in his file.  EFI argued that it should not be bound by the provisions of the Plan because it did not receive actual notice of the Plan and Plan deadlines.  The court does not find EFI's evidence and argument compelling on this point.

16.  First, the fact that EFI had actual notice of the **case** is enough to pass muster under Constitutional due process standards; actual notice of a case puts a creditor under constructive or inquiry notice that its rights might be affected and it ignores the case to its peril.  *See generally Jones v. Flowers,* 547 U.S. 220, 225 (2006).  *See also In re Christopher*, 28 F.3d 512, 520 (5th Cir. 1994); *Doucette v. Pannell (In re Pannell)*, 136 B.R. 430 (N.D. Tex. 1992), *aff'd* 974 F.2d 172 (5th Cir. 1992); *In re Sam*, 94 B.R. 893, 897 (Bankr. W.D. La. 1988), *aff'd* 894 F.2d 778 (5th Cir. 1992).

17.  However, **the Bankruptcy Code and Bankruptcy Rules** add a heightened degree of notice (above and beyond Constitutional due process) with regard to a plan.  *See* 11 U.S.C. § 1324(a); Bankr. Rule 2002(b).  But even under this heightened standard imposed by the Bankruptcy Code and Rules, the court finds that EFI should be deemed to have received notice of the Plan.  The credible evidence of notice was that Debtor's counsel mailed a copy of the Debtor's Preliminary Plan and APD to EFI at 6060 S. Stemmons Freeway, Hickory Creek, TX 75065 (*i.e.,* the address for EFI on

7

the Lease Agreement) and to Pavillion Bank at 1200 W. Campbell, Richardson, TX 75080. Ex. D-1. The court further takes judicial notice that the Chapter 13 Trustee served EFI and Pavillion Bank at these same two addresses with the Notice of Hearing on the Plan [DE #15]. These two parties and these two addresses were on the Creditor Matrix filed by the Debtor on October 1, 2008. Ex. EFI-7 [DE #1] (hereinafter, the "Original Creditor Matrix"). These two parties and these two addresses were listed on the Certificate of Service for having received the Notice of Chapter 13 Case, Meeting of Creditors, and Deadlines (with proof of claim form) [DE #7]. While the court duly notes that there was evidence that EFI closed its business location at 6060 S. Stemmons Freeway, Hickory Creek, TX 75065 (*i.e.,* the address for EFI on the Lease Agreement) and moved its business address location to 415 N. Central Expressway, Richardson, Texas 75080 (*i.e.,* the address on EFI's proof of claim) around the same time as the Debtor's Petition Date, the fact is that EFI testified that it filed a forwarding address notice with the U.S. Postal Service, had been receiving at least some forwarded mail at its changed address, and EFI had no proof in writing that it had ever notified the Debtor or her counsel of EFI's changed business address (indeed, EFI's counsel never filed a notice of appearance in the Debtor's bankruptcy case at all). Under the totality of circumstances, the court finds that EFI and Pavillion

Bank, for that matter, received sufficient notice of the Plan and confirmation hearing.[4]

**B. *Res Judicata* of Plans and Confirmation Orders, Generally.**

18. Having found that EFI received sufficient notice of the Plan, the court holds that, as a general matter, an "order confirming a Chapter 13 plan 'is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation.'" *E.g., In re Dorsey,* 505 F.3d 395, 398-99 (5th Cir. 2007). "A confirmed plan constitutes a new contract between the debtor and creditors." *Padilla v. Wells Fargo Home Mortgage, Inc., et al. (In re Padilla),* 379 B.R. 643, 663 (Bankr. S.D. Tex.

---

[4] The court notes that another creditor matrix was filed by the Debtor during her case, on October 17, 2008, which EFI points out, did not include either EFI or Pavillion Bank. Ex. EFI-10 [and DE #11] (hereinafter the "Later Creditor Matrix"). This is much ado about nothing. A simple comparison of the Original Creditor Matrix (Ex. EFI-7) with the Later Creditor Matrix (Ex. EFI-10) reveals that numerous new creditors were added to the Later Creditor Matrix. Thus the Later Creditor Matrix was a **supplemental** creditor matrix, not an **amended** creditor matrix. Granted, it would be clearer that the Debtor was intending to add creditors (not delete them) if the Debtor's counsel had simply used the term "Supplemental Creditor Matrix" (and it would also be clearer, were it not for the fact that there are a few duplications on the Later Creditor Matrix versus the Original Creditor Matrix). But the fact is that, on the same date as the Later Creditor Matrix was filed (*i.e.,* October 17, 2008), Debtor's counsel filed a Certificate of Service indicating that she had served the Plan on 42 parties. Ex. D-1 [DE # 14]. The Original Creditor Matrix listed 22 parties. The Later Creditor Matrix listed 23 parties. The service list used for serving the Plan appears to be a **combined service list (eliminating the duplications),** indicating that Debtor's counsel served parties **both** on the Original Creditor Matrix and the Later Creditor Matrix, including EFI and Pavillion Bank.

9

2007) (*citing In re Stratford of Tex., Inc.,* 635 F.2d 365, 368 (5th Cir. 1981)).

19. Moreover, even if there were illegal or impermissible provisions in the Debtor's Plan, the Plan and confirmation order might nevertheless be binding and enforceable as to EFI/Pavillion Bank, so long as they received adequate notice of the Plan. *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir. 1986) (standing for the proposition that a confirmed plan, even if it has impermissible provisions, is *res judicata* as to all parties who participated in or received notice of the confirmation process). *But see Simmons v. Savelle (In re Simmons),* 765 F.2d 547 (5th Cir. 1985) (secured creditor's lien against debtor's homestead was unimpaired by Chapter 13 confirmation order, even though its claim was treated as unsecured under the confirmed Chapter 13 plan, which creditor did not object to). *See also Sun Fin. Co. v. Howard (In re Howard),* 972 F.2d 639 (5th Cir. 1992) (suggesting that the difference in results between *Shoaf* and *Simmons* boils down to the fact that, in *Simmons*, the plan purported to extinguish a lien and a secured creditor's lien cannot be affected without following the other, more specific provisions of the Bankruptcy Code and Bankruptcy Rules).

20. This court need not decide whether the arguably impermissible treatment of EFI/Pavillion Bank in the Debtor's Plan is enforceable as to EFI/Pavillion Bank (*a la Shoaf*) or is

10

unenforceable (*a la Simmons/Howard*).[5]  The reason the court need not decide this issue is because of an ***intervening circumstance*** that occurred after the evidentiary hearing on this matter.

21.  The intervening circumstance is that, on August 11, 2009, the Debtor filed a Notice of Intent to Voluntarily Convert her Case to one under Chapter 7 [DE #54] and the court entered an Order effectuating the conversion on August 24, 2009 [DE #56]. "It would be inequitable . . . to bind a creditor to a Chapter 13 plan where the debtor has failed to fulfill his obligations under the plan or where the debtor has abandoned the plan by exercising his right to convert from Chapter 13 to Chapter 7." *Dorsey*, 505 F.3d at 399 (case involved the issue of the enforceability of a Chapter 13 plan's provisions after conversion of the Debtor's case to Chapter 7 and prior to completion of the plan).  This court construes *Dorsey* to stand for the proposition that, despite the finality of a Chapter 13 confirmation order, a Debtor, as a matter of equity, can no longer enforce such order where she abandons the underlying plan prior to completion of the plan.

---

[5] The court suspects that the United States Supreme Court may shed some light on this issue in *Espinosa v. United Student Aid Funds, Inc.,* 553 F.3d 1193 (10th Cir. 2008) *cert. granted* 129 S.Ct. 2791 (2009) (where the issue is whether a Chapter 13 debtor's discharge, after completion of a plan, operated to discharge claims of a student loan creditor who received notice of a debtor's case and a proposed plan that provided for the creditor's claim therein, when debtor did not properly file an adversary proceeding and specifically prove up undue hardship).

## <u>DISPOSITION OF MOTION IN LIGHT OF CONVERSION</u>

22. The court must now set a further evidentiary hearing on the Motion to consider whether, in light of the Debtor's abandonment of her plan and whatever change in circumstances may otherwise exist, EFI is entitled to relief from the automatic stay.

23. Among other things, the court observes that there are no conversion schedules or notice of intention on file, nor a Section 365(d) or (p) motion, to bring the Motion into further perspective.

24. A further evidentiary hearing on the Motion shall be set for **September 30, 2009, at 1:30 p.m.**


\*\*\*END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER\*\*\*